# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**PHILLIP JAMES DISTASIO,**

    **Plaintiff,**

v.

**GARY C. MOHR, et al.,**

    **Defendants.**

Case No. 2:18-cv-103
**CHIEF JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Chelsey M. Vascura**

## **OPINION AND ORDER**

This matter is before the Court on Plaintiff Phillip James DiStasio's Objections (ECF No. 6) to the United States Magistrate Judge's February 12, 2018 Report and Recommendation (ECF No. 3) recommending that the Court dismiss Plaintiff's claims. For the following reasons, Plaintiff's Objections are **OVERRULED**.

## I.

Plaintiff represents that he is serving a life sentence with no opportunity for parole. (Compl. at 5, ECF No. 2.) He brings this action pro se and in forma pauperis. (R. & R. at 1–2, ECF No. 3.) Plaintiff alleges that he was denied "a vial of suicide pills" and that the Ohio Department of Rehabilitation and Correction (ODRC) does "not currently acknowledge an inmate's right to die/assisted suicide." (Compl. at 5.) Plaintiff brings his lawsuit to effect "[a] change [in] ODRC policies [such] that inmates who wish to commit suicide are given the option of taking their own life." (*Id.* at 6.) To effectuate this policy, "suicide pills (or some other humane, efficient form of assisted suicide) [should] be furnished upon request of inmates who wish to end their lives in a safe, respectable manner." (*Id.*)

The Magistrate Judge reviewed Plaintiff's Complaint on an initial screen under 28 U.S.C. §§ 1915(e)(2) and 1915A. (R. & R. at 1.) Plaintiff's Complaint fails to state a claim, the Magistrate Judge concluded, "because there is no constitutional right to euthanasia or physician-assisted suicide." (*Id.* at 5 (citing *Washington v. Glucksberg*, 521 U.S. 702, 705, 720–34 (1997)).) Consequently, the Magistrate Judge recommended that the Court dismiss Plaintiff's claims. (*Id.* at 6.)

Plaintiff now objects to this recommendation. (Objs. at 1, ECF No. 6.)

## II.

If a party objects within the allotted time, the district court must make a de novo determination of those portions of the report and recommendation to which objection is made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); *see United States v. Curtis*, 237 F.3d 598, 602–03 (6th Cir. 2001). The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

When conducting an initial screen, courts apply the same standard that they use when considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Ransom v. Owens-Illinois, Inc.*, No. 2:14-cv-1845, 2014 WL 7184412, at *1 (S.D. Ohio Dec. 16, 2014). Under Rule 12(b)(6), a court will dismiss an action that fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Such an action will be dismissed where "there is no law to support the claims made" or where "the facts alleged are insufficient to state a claim." *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, No. 2:12-cv-299, 2013 WL 4517825, at *3 (S.D. Ohio Aug. 26, 2013) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)). When deciding a motion to dismiss, the court must construe the complaint in the light

most favorable to the plaintiff and accept all of the complaint's well-pleaded factual allegations as true. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). The court may consider the complaint and any attached exhibits, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss as long as the exhibits are referenced in the complaint and are central to the plaintiff's claims. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

A complaint will survive a motion to dismiss if it contains sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (quoting *Twombly*, 550 U.S. at 557). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When, as here, a litigant proceeds pro se, the court construes his pleadings liberally and holds them to less stringent standards than pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). This does not mean though that a pro se litigant can ignore "basic pleading essentials." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

In his Objections, Plaintiff advances a variety of arguments for why the ODRC should allow him to commit suicide and should, in fact, facilitate his suicide by providing him with a humane method to kill himself. (*See generally* Objs., ECF No. 6.) He also makes several requests

3

in support of those arguments. Plaintiff requests an analysis of prison suicide statistics, data on instances when the United States and other countries have assisted individuals commit suicide, and statistics on prison violence, which, he argues, will show that "even those not convicted of violent crimes will kill themselves (and possibly others) in order to avoid lengthy prison time." (Objs. at 3–4, 11.) Plaintiff requests information about "inmate Whipple." (*Id.* at 7.) Plaintiff asks the Court to redefine "terminal condition" to "include life imprisonment since it could be argued that no condition is more terminal or hopeless than to be confined away from society until the end of one's days with no chance of freedom." (*Id.* at 4.) Plaintiff requests that, in lieu of an order directing the ODRC to assist him commit suicide, the Court "re-sentence him to death." (*Id.* at 10.) And Plaintiff asks the Court to appoint counsel to assist him with this case. (*Id.* at 2.)

Plaintiff brings his claims under 42 U.S.C. § 1983. (*See* Compl. at 5–6, ECF No. 2.) To assert a claim under § 1983, Plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States and that this deprivation was caused by a person acting under color of law. *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015).

Plaintiff contends that the ODRC, in failing to recognize his purported right to commit suicide, has deprived him of a right secured by the Eighth and Fourteenth Amendments. (*See* Objs. at 2–3.) The Court disagrees. In *Washington v. Glucksberg*, the United States Supreme Court explicitly stated that assisted suicide is not a fundamental liberty interest protected by the Due Process Clause. *Glucksberg*, 521 U.S. at 728. And established jurisprudence regarding prisoner suicide contradicts Plaintiff's reliance on the Eighth Amendment. The Sixth Circuit has consistently held that a prison official violates an inmate's Eighth Amendment right if the official recklessly disregards a known risk of an inmate's suicide. *Comstock v. McCrary*, 273 F.3d 693, 711 (6th Cir. 2001) ("This circuit has consistently recognized a prisoner's established

4

right to medical attention once the prisoner's suicidal tendencies are known."); *see also Schultz v. Sillman*, 148 F. App'x 396, 404 (6th Cir. 2005) ("The jurisprudence of the Sixth Circuit has established a clear right of a prisoner not to have his psychological needs, in the form of suicidal tendencies, treated with deliberate indifference. . . . Therefore, if a jury determines that Schultz demonstrated a strong likelihood of suicide, and that Sillman was aware of this likelihood but chose to disregard it, Sillman's actions would constitute a violation of Schultz's clearly established Eighth Amendment right to receive medical treatment for his suicidal tendencies."). Neither the Supreme Court nor the Sixth Circuit has ever suggested that the Eighth Amendment, which prohibits cruel and unusual punishments, establishes a right to assisted suicide.

Plaintiff attempts to distinguish his case from *Glucksberg*, noting that *Glucksberg* was an action "to strike a statute mandating criminal liability for those who assist others in suicide" whereas this case "is initiated by a state prisoner who essentially seeks the right to assisted suicide by state officials who are constitutionally required to provide all medical needs." (Objs. at 11.) But this distinction is immaterial given the Supreme Court's conclusion "that the asserted 'right' to assistance in committing suicide is not a fundamental liberty interest protected by the Due Process Clause," *Glucksberg*, 521 U.S. at 728, and that state prohibitions on assisted suicide are rationally related to the legitimate interests of "prohibiting intentional killing and preserving life; preventing suicide; maintaining physicians' role as their patients' healers; protecting vulnerable people from indifference, prejudice, and psychological and financial pressure to end their lives; and avoiding a possible slide towards euthanasia," *Vacco v. Quill*, 521 U.S. 793, 808–09 (1997) (citing *Glucksberg*, 521 U.S. at 728–35). *Glucksberg* does not foreclose his claims, Plaintiff further argues, because the Supreme Court stated at the end of its decision:

> Throughout the Nation, Americans are engaged in an earnest and profound debate about the morality, legality, and practicality of physician-assisted suicide. Our holding permits this debate to continue, as it should in a democratic society.

*Glucksberg*, 521 U.S. at 735. Plaintiff, however, misinterprets the significance of this statement. The Supreme Court, in stating that the debate over physician-assisted suicide should continue, did not reverse its holding that there is no substantive due process right to assisted suicide. Rather, the Court reiterated through this statement that it would not foreclose the policy debate—and potential legislation—on assisted suicide by holding that assisted suicide is a federal constitutional right. *See id.* at 720 ("By extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action.").

Because there is no constitutional right to assisted suicide, Plaintiff's claims fail and the Court need not consider the various requests Plaintiff makes in his Objections.

### III.

For these reasons, the Court **OVERRULES** Plaintiff's Objections (ECF No. 6), **ADOPTS** and **AFFIRMS** the Magistrate Judge's Report and Recommendation (ECF No. 3), and **DISMISSES** Plaintiff's claims. The Clerk is **DIRECTED** to enter final judgment in this matter.

**IT IS SO ORDERED.**

5-4-2018
**DATE**

EDMUND A. SARGUS, JR.
**CHIEF UNITED STATES DISTRICT JUDGE**